UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PINEBROOK HOLDINGS, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:19CV1562 RLW |
| ) | |
| AARON NARUP, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss Under Rule 12(B)(1) and (6) and Brief in Support filed by Defendants Aaron Narup, Stephen J. Reuter, Christine M. Reuter, American Credit Services LLC, American Credit Services Management, LLC, American Credit Services Management II, LLC, and the Stephen J. Reuter and Christine M. Reuter Living Trust (collectively referred to as "Defendants") (ECF No. 29), the Motion to Dismiss Defendants' Counterclaim filed by Plaintiffs Pinebrook Holdings, LLC, PH Financial Services, LLC, Danridge Holdings, LLC, St. Louis Financial Group, LLC, West Coast Premier Financial, LLC, Los Angeles Financial Group, LLC, Louisiana Financial Group, LLC, California Financial Group, LLC, Pacific Cash Advance, LLC, and Flexible Finance of Wisconsin, LLC (collectively referred to as "Plaintiffs") (ECF No. 37), and Plaintiffs' Motion to Enter Plaintiffs' Proposed Scheduling Order (ECF No. 46). After careful consideration, the Court grants Defendants' Motion to Dismiss, in part, as to the claims against the Stephen J. Reuter and Christine M. Reuter Living Trust *only*. The Court also grants Plaintiffs' Motion to Dismiss Defendants' Counterclaim. Lastly, the Court denies Plaintiffs' request to enter their proposed scheduling order and will set a Rule 16 Conference in a separate order.

## BACKGROUND[1]

This case arises from alleged breach of duty and contract and misappropriation of trade secrets. Plaintiffs Pinebrook Holdings, LLC ("Pinebrook"), PH Financial Services, LLC ("PHFS"), Danridge Holdings, LLC, St. Louis Financial Group, LLC, West Coast Premier Financial, LLC, Los Angeles Financial Group, LLC, Louisiana Financial Group, LLC, California Financial Group, LLC, Pacific Cash Advance, LLC, and Flexible Finance of Wisconsin, LLC (collectively "Plaintiffs") are engaged in offering, marketing, selling, and providing financial services and related ancillary products and services to their individual customers in the short-term loan industry. (V. First Am. Compl. for Injunctive and Other Relief ("Compl.") ¶ 23, ECF No. 20) Danridge Holdings, LLC ("Danridge"), St. Louis Financial Group, LLC, West Coast Premier Financial, LLC, Los Angeles Financial Group, LLC, Louisiana Financial Group, LLC, California Financial Group, LLC, Pacific Cash Advance, LLC, and Flexible Finance of Wisconsin, LLC (the "Loan Writers") contract with PHFS, which provides support for human resources services, accounting services, payroll services, and information technology services, including loan management software, to the Loan Writers. (*Id.* ¶ 26) Although Pinebrook is the sole member of the other defendant limited liability companies ("LLCs"), Plaintiffs assert "each company exists as a separate and distinct legal entity and each company observes separate corporate formalities." (*Id.* ¶ 27)

In November 2012, PHFS entered into an agreement with a vendor, Virinchi Technologies Limited ("VTL"), for services relating to VTL's QFund software product ("QFund

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

Software"). (*Id.* ¶ 32) Although the baseline version of the QFund Software is publicly available for purchase, PHFS alleges it has spent substantial time and money to modify the QFund Software for its specific business purposes. (*Id.* ¶ 33) In July 2016, Danridge entered into an agreement with another vendor, Infinity, for the purchase of a separate loan management software ("Infinity Software"). (*Id.* ¶35) As with the QFund Software, Plaintiffs allege they expended considerable time and money customizing the Infinity Software for their business purposes. (*Id.* ¶ 37) Accordingly, Plaintiffs claim their customized versions of QFund Software and Infinity Software are protected trade secrets. (*Id.* ¶¶ 34, 38-41)

Stephen Reuter began his employment with PHFS in 2011. (*Id.* ¶ 42) Most recently, he served as Store Maintenance Manager and Title Loan Specialist and was responsible for marketing, selling, and collecting on financial products sold by the Loan Writers. (*Id.* ¶ 43) Narup began his employment with a PHFS in 2012. (*Id.* ¶ 58) Most recently, Narup served as IT Administrative Supervisor and Portfolio Manager and was responsible for, among other things, managing PHFS's online loan management system, which included QFund Software and Infinity Software. (*Id.* ¶ 59)

On December 2, 2013, Stephen Reuter signed an agreement that contained restrictive covenants concerning, among other provisions, confidential information, non-solicitation, and enforcement. (*Id.* ¶¶ 52-56) On December 30, 2013, Narup signed an agreement with identical provisions. (*Id.* ¶¶ 62-66) Additionally, both Stephen Reuter and Narup had agreed to abide by PHFS's Employee Handbook, which also included confidentiality and non-disclosure provisions. (*Id.* ¶¶ 68-70; ECF No. 20-5)

On December 31, 2013, Stephen Reuter and his wife, Christine Reuter, became the sole owners and operators of American Credit Services, LLC ("ACS") and American Credit Services

Management, LLC ("ACSM"). (Compl. ¶ 46, ECF No. 20) ACS and ACSM are also in the business of offering, marketing, selling, and providing financial services and related ancillary products and services to individual customers in the short-term loan industry. (*Id.* ¶ 47) Between January 1, 2014 and October 31, 2018, ACS contracted with PHFS for PHFS to provide services, including PHFS's modified version of the QFund Software and other loan management software, to ACS for the operation of its loan store located in St. Louis (referred to in the Complaint as "Store 36"). (*Id.* ¶ 49)

In early 2018, PHFS decided to upgrade its loan software to QFund10, a newer version of the QFund Software. (*Id.* ¶ 71) Narup was responsible for managing the conversion to QFund10. (*Id.* ¶ 78) The process to convert to QFund10 began on April 2, 2018 and was expected to be completed by July 1, 2018. (*Id.* ¶ 79) Plaintiffs, however, claim the conversion to QFund10 has not been completed. (*Id.* ¶ 80)

On July 26, 2017, Narup and the Reuters created American Credit Services Management II, LLC ("ACSM-II"). Narup and the Stephen J. Reuter and Christine M. Reuter Living Trust (of which Stephen and Christine Reuter are the sole trustees and beneficiaries) are the current members of ACSM-II. (*Id.* ¶ 83) Plaintiffs allege ACSM-II was created to unfairly compete with Plaintiffs by diverting business away from Plaintiffs to Defendants. (*Id.* ¶ 84) On April 2, 2018, PHFS management directed Narup to work with VTL to begin conversion of one of PHFS's managed loan stores in New Mexico (referred to in the Complaint as "Store 26") to QFund10. (*Id.* ¶ 87) Plaintiffs allege Narup took no substantive steps to convert Store 26 to QFund10; rather, he directed VTL to convert ACS's Store 36 to QFund10. (*Id.* ¶¶ 91-93) In addition to diverting software conversion efforts towards their venture, Stephen Reuter and

Narup continued to make other preparations to use PHFS's confidential information and trade secrets. (*Id.* ¶ 101)

On September 4, 2018, ACS entered into a lease agreement for a loan store located in St. Peters (referred to in the Complaint as "Store 37"). (*Id.* ¶ 102) On September 20, 2018, Narup submitted a resignation letter to PHFS, and his final day of employment was October 5, 2018. (*Id.* ¶ 103) Despite indicating he planned to "work with a very close friend in growing his construction company," Narup actually planned to operate Stores 36 and 37 to compete with Plaintiffs. (*Id.* ¶ 103) On November 2, 2018, PHFS terminated Stephen Reuter's employment. (*Id.* ¶ 111) Plaintiffs allege that, prior to the end of their employment with PHFS, Stephen Reuter and Narup deleted emails and other electronic data related to their efforts towards establishing ACS, ACSM, and ACSM-II. (*Id.* ¶ 112) According to Plaintiffs, Narup and Stephen Reuter have used and disclosed PHFS's confidential information and trade secrets, both during their employment with PHFS and following their separation from PHFS, to compete with Plaintiffs. (*Id.* ¶ 118)

Plaintiffs filed this lawsuit asserting the following ten causes of action in their Verified First Amended Complaint for Injunctive and Other Relief ("Complaint"): violation of the Computer Fraud & Abuse Act (CFAA), 18 U.S.C. § 1030 *et seq.* (Count I); violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1833, *et seq.* (Count II); violation of the Missouri Uniform Trade Secrets Act (MUTSA), Mo. Rev. Stat. § 417.450, *et seq.* (Count III); breach of the duty of loyalty (Count IV); breach of contract (Count V); tortious interference with a contract (Count VI); tortious interference with a business expectancy (Count VII); unjust enrichment (Count VIII); conversion (Count IX); and civil conspiracy (Count X). On the same date Plaintiffs filed their original complaint, they moved for a temporary restraining order and

preliminary injunction against Defendants. (ECF No. 6)  The Court held a hearing on June 7, 2019, and heard arguments from counsel for both sides.  At the conclusion of the hearing, the Court continued the hearing at the parties' request so they could continue their efforts to negotiate terms of a potential temporary restraining order.  On July 29, 2019, the Court issued the parties' proposed Consent Injunction.  (ECF Nos. 26-27)

On July 30, 2019, Defendants filed a counterclaim against PHFS to recover attorneys' fees pursuant to the DTSA, 18 U.S.C. § 1836(b)(3)(D), alleging PHFS brought this action in bad faith "to punish [Stephen] Reuter and those associated with him for testifying truthfully against [PHFS], [Pinebrook], and others" in an unrelated securities fraud and breach of fiduciary duty lawsuit in St. Louis County Circuit Court that went to trial in December 2018.  (Answer of Defs. to Counts II, III, and V of Pls.' First Am. Compl. ¶¶ 1-6, ECF No. 30)

Defendants have now moved to dismiss all named plaintiffs except PHFS pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.  Defendants also move to dismiss Counts I, IV, VI, VII, VIII, IX, and X pursuant to Rule 12(b)(6), arguing those counts fail to state a claim, are preempted by the MUTSA, or both fail to state a claim and are preempted.  Additionally, Plaintiffs have moved to dismiss Defendants' counterclaim.  Both motions to dismiss are fully briefed and ready for disposition.

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction.  The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (internal citations and quotation marks omitted).  "The purpose of a Rule 12(b)(1) motion is to allow the court to address the threshold question of jurisdiction, as

'judicial economy demands that the issue be decided at the outset rather than deferring it until trial.'" *B.A. v. Missouri*, No. 2:16 CV 72 CDP, 2017 WL 106433, at *1 (E.D. Mo. Jan. 11, 2017) (quoting *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). To dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Swiish v. Nixon*, No. 4:14-CV-2089 CAS, 2015 WL 867650, at *2 (E.D. Mo. Feb. 27, 2015) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks and citation omitted). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations omitted)). Where a movant raises a factual attack, the court may consider matters outside the pleadings, and the non-movant does not have the benefit of the 12(b)(6) protections. *Id.* (citation omitted).

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th

Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

## DISCUSSION

### I. Defendants' motion to dismiss pursuant to Rule 12(b)(1)

Defendants argue every defendant except PHFS lacks standing and, accordingly, their claims should be dismissed. According to the Complaint, Pinebrook is the sole member of the other defendant LLCs. (Compl. ¶ 27, ECF No. 20) Plaintiffs have asserted, however, that "each company exists as a separate and distinct legal entity and each company observes separate corporate formalities." (*Id.*) Narup and Stephen Reuter worked for only one of the plaintiff LLCs: PHFS. Accordingly, Defendants argue PHFS is the only entity that has standing to assert claims in this case.

Plaintiffs respond that they operate as a single business that offers, markets, sells, and provides financial services in the short-term loan industry under the umbrella of Pinebrook. Specifically, PHFS provides support for human resources services, accounting services, payroll services, and information technology services, including loan management software, to the Loan

Writers. (*Id.* ¶ 26) Pinebrook, as the sole member of PHFS and each Loan Writer, argues that an injury to one of its subsidiaries is necessarily an injury to the others and to Pinebrook itself. Additionally, Plaintiffs argue Pinebrook and the Loan Writers have standing as third party beneficiaries and assigns to the Confidentiality and Non-Solicitation Agreements between PHFS and Narup and Stephen Reuter.

Upon consideration, the Court finds the allegations in the Complaint are sufficient to survive a motion to dismiss for lack of standing at this time. While the alleged assignment may ultimately prove invalid for the reasons raised by Defendants in their briefing, the Court need not determine that issue in a motion to dismiss. *See CPC Logistics, Inc. v. Int'l Paper Co.*, No. 4:11CV774 JCH, 2011 WL 4550192, at *3 (E.D. Mo. Sept. 30, 2011) (denying a motion to dismiss for lack of standing by noting one defendant would have standing even if the alleged assignment proved invalid after discovery). The Court assumes the allegation in the complaint that Pinebrook and the Loan Writers are third party beneficiaries and assigns to the agreements between PHFS and Narup and Stephen Reuter is true. *See Raynor*, 690 F.3d at 955; *Eckert*, 514 F.3d at 806. Accordingly, Defendants' Motion to Dismiss is denied as it relates to Plaintiffs' standing.

## II. Defendants' motion to dismiss pursuant to Rule 12(b)(6)

### *(a) CFAA claim*

Defendants first argue Plaintiffs' claim under the CFAA (Count I) should be dismissed because the Complaint fails to allege multiple elements of such a claim. Although the Complaint does not specify which provisions Defendants' allegedly violated, Plaintiffs argue their allegations support a cause of action under §§ 1030(a)(2)(C), (a)(4) and (a)(5).

A person violates § 1030(a)(2)(C) if he or she "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." A person violates §1030(a)(4) if he or she, in relevant part, "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." A person violates § 1030(a)(5)(A) if he or she "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer."

The Court finds that Plaintiffs have alleged sufficient facts to support a claim under § 1030(a)(5). A person violates the CFAA if he or she "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage," § 1030(a)(5)(B), or "causes damage and loss," § 1030(a)(5)(C). "Courts have consistently interpreted 'loss' . . . to mean a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *Lasco Foods, Inc. v. Hall & Shaw Sales, Mktg. & Consulting, LLC*, 600 F. Supp. 2d 1045, 1052 (E.D. Mo. 2009) (quoting *Frees, Inc. v. McMillian*, No. 05–1979, 2007 WL 2264457, *3, 2007 U.S. Dist. LEXIS 57211, *7 (W.D. La. Aug. 6, 2007)). Plaintiffs allege in the Complaint that "Narup and [Stephen] Reuter deleted emails and other electronic date [sic] in order to conceal their use and disclosure of PHFS's Confidential Information and Trade Secrets." (Compl. ¶ 112, ECF No. 20) Additionally, Plaintiffs claim "PHFS has incurred expenses in excess of $5,000.00 to investigate and remedy the damage caused by Narup' [sic] and [Stephen] Reuter's deletion of emails and other electronic information." (*Id.* ¶ 113) The Court finds the allegedly deleted emails and data,

as well as the cost of investigating and remedying the alleged misconduct, are sufficient to state a claim for damage and loss under the CFAA.

The Court also finds that Plaintiffs have stated a claim under §§ 1030(a)(2)(C) and (a)(4). Plaintiffs allege in Count I that "Defendants Narup and [Stephen] Reuter fraudulently or intentionally *exceeded their authorization* to access PHFS's protected computers and protected computer network." (Compl. ¶ 128, ECF No. 20) (emphasis added) Other courts, including one in this district, have found that an employer states a claim under the CFAA if they allege an employee acted "without authorization" after having breached the duty of loyalty. For example, the court in *Lasco Foods, Inc.* concluded a corporation had stated a claim under the CFAA by alleging two former employees "acted without authorization when they obtained Lasco's [confidential and trade secret information] for their personal use and in contravention of their fiduciary duty to their employer."[2] 2009 WL 3523986, at *3-4 (citing *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006)). Here, Plaintiffs allege Narup and Stephen Reuter accessed PHFS's protected information to further their own business interests in contravention of their duty of loyalty as claimed in Count IV. The Court finds this conduct, if proven, clearly exceed Narup and Stephen Reuter's authorization to access PHFS's protected computers and protected computer network in violation of the CFAA. Accordingly, Defendants' Motion to Dismiss as it relates to Count I is denied.

---

[2] The court in *Lasco Foods, Inc.* also relied on the Restatement (Second) of Agency § 112 (1958), which provides: "Unless otherwise agreed, the authority of an agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal." 2009 WL 3523986, at *3 n.11 (noting the Supreme Court of Missouri has adopted the Restatement (Second) of Agency).

### *(b) Duty of loyalty*

Defendants next argue Plaintiffs' claim for breach of the duty of loyalty (Count IV) should be dismissed for failure to state a claim. Plaintiffs allege Narup and Stephen Reuter, "[d]uring the term of their employment with Pinebrook," "acted contrary to Plaintiffs['] interests" and "acted in direct competition with Plaintiffs." (Compl. ¶¶ 151-152, ECF No. 20) Defendants, however, argue they are not competitors with Plaintiffs.

Plaintiffs allege in their Complaint that PHFS provides "human resources services, accounting services, payroll services, and information technology services, including loan management software" to the Loan Writers that in turn provide financial services to consumers in the short-term loan industry. (Compl. ¶ 26, ECF No. 20) ACS, ACSM, and ACSM-II, on the other hand, "are in the business of offering, marketing, selling, and providing financial services in the short-term loan industry." (*Id.* ¶ 47) Thus, Defendants argue "Narup and Stephen Reuter are not competing with [PHFS] — they are competing with its customers — and thus they did not as a matter of law breach any duty of loyalty owed to [PHFS]." (ECF No. 29 at 9)

Whether Defendants are competitors with Plaintiffs is ultimately a question of fact not properly decided in a motion to dismiss. The Court finds that Plaintiffs have sufficiently alleged a claim for breach of the duty of loyalty, and Defendants' Motion to Dismiss is denied as to Count IV.

### *(c) Tortious interference claims*

Defendants next argue Plaintiffs' claims for tortious interference with a contract and business expectancy (Counts VI and VII, respectively) should be dismissed because Plaintiffs have failed to allege facts to support the necessary finding of causation.

- 12 -

To state a claim for tortious interference with a contract or business expectancy, a plaintiff must allege the following elements: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *US Polymers-Accurez, LLC v. Kane Int'l Corp.*, No. 4:17-CV-2371 RLW, 2018 WL 4491168, at *3 (E.D. Mo. Sept. 19, 2018) (quoting *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. 1990) (en banc)). "Missouri courts apply a 'but-for' test of causation and ask if a defendant took affirmative steps to induce the breach; and if so, if the contract would have been performed absent the alleged interference." *Design Nine, Inc. v. Arch Rail Grp., LLC*, No. 4:18 CV 428 CDP, 2019 WL 1326677, at *6 (E.D. Mo. Mar. 25, 2019) (citing *McGuire v. Tarmac Envtl. Co.*, 293 F.3d 437, 441 (8th Cir. 2002).

Plaintiffs allege in the Complaint that "[Christine] Reuter, ACS, ACSM, and ACSM-II were aware of Narup's and [Stephen] Reuter's obligations under their respective Confidential Information and Non-Solicitation Agreements and *encouraged* them to violate same." (Compl. ¶ 122, ECF No. 20) (emphasis added) Additionally, Plaintiffs allege that "Narup and [Stephen] Reuter were aware of each other's obligations under their respective Confidentiality and Non-Solicitation Agreements and *encouraged* each other to violate same." (*Id.* ¶ 123) (emphasis added) Defendants argue "encouraging" someone to intentionally interfere with a business expectancy or to breach a contract is not the same as "inducing or causing" such interference or breach to satisfy the but-for standard. Plaintiffs note that Defendants cited no authority to support their argument. In their reply memorandum, Defendants assert their failure is "easily remedied" and proceed to cite one opinion from Michigan's intermediate appellate court. *See*

- 13 -

*People v. Springs*, 300 N.W.2d 315, 319 (Mich. Ct. App. 1980). The Court, however, finds that proffered case is both factually and legally inapposite to this case.[3]

The Court finds Plaintiffs have sufficiently stated claims for both tortious interference with a contract and business expectancy. Plaintiffs' choice of verb is not fatal. "A motion to dismiss will not be granted merely because the complaint does not state with precision every element necessary for recovery." *Trinity Hospice, Inc. v. Miles*, No. 406CV1674 CDP, 2007 WL 844817, at *1 (E.D. Mo. Mar. 16, 2007) (quoting *Wallace v. Comprehealth, Inc.*, 36 F. Supp. 2d 892, 893 (E.D. Mo. 1998)). The Court finds that the allegations in the Complaint, along with the attached exhibits documenting conversations between Narup and Stephen Reuter, plausibly establish Defendants caused a breach or interference with known contracts and business relationships. Accordingly, the Court denies Defendants' Motion to Dismiss as to Counts VI and VII.

### *(d) Conversion*

Defendants next argue Plaintiffs' claim for conversion (Count IX) should be dismissed because Plaintiffs have failed to allege that they were deprived of possession of the allegedly converted property. Under Missouri law, conversion occurs where there is an "unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 523 (Mo. 1988) (en

---

[3] In *People v. Springs*, a man was found guilty of the crime of "pandering," which was defined in Michigan's statutes as "unlawfully, feloniously and wickedly inducing, persuading, inveigling or enticing a female person to become a prostitute." 300 N.W.2d at 316. The Michigan Court of Appeals reversed the conviction, in part, because the trial judge had committed error by instructing the jury that "the defendant is charged with the crime of inducing, inveigling, persuading, *encouraging*, or enticing a female person to become a prostitute." *Id.* at 319. The appellate court held that "[i]nducing, inveigling, persuading, and enticing all imply an active leading to a particular action. *Encouraging indicates a less active role*. It falls short of persuading." *Id.*

- 14 -

banc). As such, a claim for conversion has the following three elements: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." *JEP Enters., Inc. v. Wehrenberg, Inc.*, 42 S.W.3d 773, 776 (Mo. Ct. App. 2001). The Complaint does not include an allegation that Plaintiffs were deprived of the use of their confidential information and trade secrets. Accordingly, Defendants argue Count IX should be dismissed.

Plaintiffs respond by arguing there are multiple ways to prove conversion. "In Missouri, 'conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand.'" *Harleman Mfg., LLC v. Pengo Corp.*, No. 14-CV-03498-MDH, 2016 WL 4544362, at *6 (W.D. Mo. Aug. 30, 2016) (quoting *Kennedy v. Fournie*, 898 S.W.2d 672, 678 (Mo. Ct. App. 1995)); *see also Emerick*, 756 S.W.2d at 525. Plaintiffs contend Defendants only address the first method but, nevertheless, argue the element of deprivation of possession "is implicit in Plaintiffs' allegations that (1) Defendants assumed the right of ownership over PHFS's personal property, including its Confidential Information and Trade Secrets, (2) Plaintiffs requested the return of that property, and (3) Defendants continue to exercise ownership over that property." (ECF No. 43 at 16) Furthermore, Plaintiffs argue they have stated claims under the other two methods by alleging that Defendants have used and are using PHFS's confidential information and trade secrets and that Defendants have refused PHFS's demand for return of its personal property.

To the extent Plaintiffs base their claim for conversion on Defendants' alleged taking of documents, the Court finds that Plaintiffs have failed to state a claim for conversion. Any method of proving conversion requires a showing of actual deprivation of the plaintiff's

possession or control of its property. Here, the confidential information and trade secrets allegedly converted include "the QFund Software with modifications made at PHFS's expense, PHFS's loan underwriting worksheet, PHFS's title loan manual, PHFS's compliance documents, PHFS's personnel policies, and PHFS's loan agreement."[4] (Compl. ¶ 109, ECF No. 20) Plaintiffs have not alleged Defendants actually deprived them of possession or control of PHFS's loan writing worksheet, title loan manual, compliance documents, personnel policies, or loan agreement. Rather, Plaintiffs allege Defendants improperly made and retained copies of those documents. "Under Missouri law, a copy of a document cannot be converted where the owner has not been deprived of possession of the property or prevented from utilizing the property." *Monarch Fire Prot. Dist. of St. Louis Cty., Mo. v. Freedom Consulting & Auditing Servs., Inc.*, 644 F.3d 633, 637 (8th Cir. 2011). The Court finds that Plaintiffs' claim for conversion survives only to the extent it alleges conversion of the QFund Software with modifications made at PHFS's expense and any other documents or material taken and retained to which Plaintiffs no

---

[4] More specifically, the Complaint defines "confidential information" to include:

> customer contact information, Social Security numbers, personal financial information and loan histories; contract terms; revenue and expense information, reports and projections; marketing concepts and plans; procedures; manuals; databases; computer software and programs; information about the experience, skill-set and compensation of other employees; and lists of and other information pertaining to and/or received from employees and/or customers[.]

(Compl. ¶ 29, ECF No. 20) The Complaint further defines "trade secrets" to include:

> formulas, patterns, compilations, programs, methods, techniques, and processes for marketing and selling financial products to the Loan Writers' customers[.] . . . Specifically, PHFS's trade secrets include, but are not limited to, PHFS's loan underwriting worksheet, PHFS's title loan manual, PHFS's compliance documents, PHFS's personnel policies, and PHFS's loan agreement.

(*Id.* ¶¶ 30-31)

longer have access. Consequently, the Court denies Defendants' Motion to Dismiss as to Count IX.

### *(e) MUTSA Preemption*

Defendants next argue Counts IV (duty of loyalty), VI (tortious interference with a contract), VII (tortious interference with a business expectancy), VIII (unjust enrichment), IX (conversion), and X (civil conspiracy) are preempted by the MUTSA. Plaintiffs argue such a determination is premature in a motion to dismiss.

Another court in this district has outlined what is required for preemption under MUTSA:

> The MUTSA "displace[s] conflicting tort, restitutionary, and other laws ... providing civil remedies for misappropriation of a trade secret." Mo.Rev.Stat. § 417.463.1. Federal courts in Missouri have interpreted this provision to preempt "civil claim[s] that are derivative of a claim of misappropriation of trade secrets." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00CV70 CEJ, 2002 WL 32727076, at *4 (E.D.Mo.Feb.25, 2002). Common-law claims are preempted as derivative "if they are based on facts related to the misappropriation of trade secrets claim." *Reliant Care Mgmt, Co. v. Health Sys.*, 2011 WL 4369371 at *3–4 (internal citations omitted); *see also Bancorp Servs., L.L.C*, 2002 WL 32727076, at *4; and *Hallmark Cards v. Monitor Clipper Partners*, 757 F.Supp.2d 904, 917 (W.D.Mo.2010)). "The crucial question is whether 'the claims are no more than a restatement of the same operative facts' that formed the basis of the plaintiff's statutory claim for trade secret appropriation." *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08CV1719 JCH, 2010 WL 1691454, at *2 (E.D. Mo. Apr. 27, 2010) (internal citations omitted). In determining whether to find a claim preempted under MUTSA, courts must "look beyond the label of the claims to the facts being asserted in support of the claims." *Id.* at *1 (internal quotations omitted). However, "[f]or preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no application." *Hallmark Cards*, 757 F.Supp.2d at 917. Put another way, MUTSA will not preempt a claim if the information at issue does not rise to the level of a statutorily-defined trade secret.

*Level One Techs., Inc. v. Penske Truck Leasing Co., L.P.*, No. 4:14 CV 1305 RWS, 2015 WL 1286960, at *4 (E.D. Mo. Mar. 20, 2015).

The Court concludes that it is premature to dismiss Plaintiffs' claims in Counts IV, VI, VII, VIII, IX, and X based upon pre-emption. *See US Polymers-Accurez, LLC v. Kane Int'l*

- 17 -

*Corp.*, No. 4:17-CV-2371 RLW, 2018 WL 4491168, at *2 (E.D. Mo. Sept. 19, 2018). The Court has not determined as a matter of law that the underlying information qualifies as a trade secret. Until that time, it would be premature to find that Plaintiffs' claims preempted by the MUTSA. *See Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 757 F.Supp.2d 904, 917 (W.D. Mo. 2010) ("For preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no application."). Accordingly, the Court denies the Motion to Dismiss on this basis.

### (f) *Claims against Reuter Living Trust*

Defendants lastly argue all claims against the Stephen J. Reuter and Christine M. Reuter Living Trust should be dismissed because, in part, it is not capable of being sued. *See Mayer v. Lindenwood Female Coll.*, 453 S.W.3d 307, 314 (Mo. Ct. App. 2014) ("In contrast to a corporation, a trust is not a legal entity and lacks the capacity to sue or be sued."). Plaintiffs do not dispute dismissal of the claims against the trust. (Pls.' Suggestions in Opp'n to Defs.' Mot. to Dismiss, ECF No. 43 at 1 n.1) Consequently, the Court grants Defendants' Motion to Dismiss as it relates to the claims against the Stephen J. Reuter and Christine M. Reuter Living Trust.

### III. Plaintiffs' motion to dismiss counterclaim

Plaintiffs argue Defendants' counterclaim against PHFS to recover attorneys' fees pursuant to the DTSA, 18 U.S.C. § 1836(b)(3)(D), is not ripe for review until the Court issues a decision on the merits of Plaintiffs' underlying claims. Rule 54(d)(2)(A) requires "[a] claim for attorney's fees . . . *must be made by motion* unless the substantive law requires those fees to be proved at trial as an element of damages." (Emphasis added). Plaintiffs argue the DTSA does not require attorney's fees be proved as an element of damages at trial. Therefore, any request

for attorney's fees must be made via motion after final a determination on the merits of Plaintiffs' claims.

Defendants respond by noting the relevant provision in the DTSA requires a party seeking an award of attorney's fees do more than simply prevail on the merits. Subsection 1836(b)(3)(D) provides, in relevant part, that a court may "award reasonable attorney's fees to the prevailing party" "if a claim of the misappropriation is made in bad faith, *which may be established by circumstantial evidence*." (Emphasis added). Because the DTSA requires proof of bad faith and explicitly notes such bad faith may be shown by circumstantial evidence, Defendants argue it is appropriate to raise this claim as a counterclaim to put Plaintiffs on notice.

The Court agrees with Plaintiffs. The language of the subsection itself demonstrates attorney's fees may only be awarded to "the prevailing party" – i.e., after a party *prevails* on a determination on the merits. Additionally, Plaintiffs cite examples of other courts within this circuit dismissing counterclaims for attorney's fees brought pursuant to other federal statutes that allow for judicial awards of attorney's fees after a finding of bad faith. *See, e.g., Bond v. USAA Fed. Sav. Bank*, 11 F. Supp. 3d 940, 942 (D. Minn. 2014) (dismissing a counterclaim for attorney's fees under the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693m(f), which allows a court to make such an award if the court finds the action was "brought in bad faith and for the purpose of harassment"); *Kirscher v. Messerli & Kramer, P.A.*, No. 05–1901, 2006 WL 145162, at *7 (D. Minn. Jan. 18, 2006) (dismissing a counterclaim for attorney's fees under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692k(a)(3), which allows a court to make such an award if the court finds the action was "brought in bad faith and for the purpose of harassment," but permitting the defendant to request attorney's fees via a motion filed at a later stage in the proceedings); *see also Kropf v. TCA, Inc.*, 752 F. Supp. 2d 797, 800 (E.D. Mich.

2010) (noting that "the majority of cases to consider this issue [under the FDCPA] have instead dismissed the counterclaim as premature or for lack of a statutory cause of action, permitting defendants to renew attorney's fee requests at the conclusion of the case"). Consequently, the Court dismisses Defendant's Counterclaim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Under Rule 12(B)(1) and (6) and Brief in Support (ECF No. 29) is **GRANTED, in part,** as to the claims against the Stephen J. Reuter and Christine M. Reuter Living Trust, **and DENIED, in part**, as to the remainder of the arguments. The claims against the Stephen J. Reuter and Christine M. Reuter Living Trust *only* are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Defendants' Counterclaim (ECF No. 37) is **GRANTED**.

A separate Order of Partial Dismissal accompanies this Memorandum and Order.

**IT IS FINALLY ORDERED** that Plaintiffs' Motion to Enter Plaintiffs' Proposed Scheduling Order (ECF No. 46) is **DENIED**. The Court will issue a separate order setting a Rule 16 Conference and directing the parties to submit a *joint* proposed scheduling plan.

Dated this 21st day of February, 2020.

 **RONNIE L. WHITE**
 **UNITED STATES DISTRICT JUDGE**