**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| PINEBROOK HOLDINGS, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:19-cv-01562-MTS |
| ) | |
| AARON NARUP, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff PH Financial Services, LLC's ("PHFS") Motion to Dismiss Defendants' Counterclaim, Doc. [57], and Third-Party Defendants' Motion to Dismiss Third-Party Complaint, Doc. [67].  Defendants Aaron Narup and Stephen Reuter filed a Counterclaim to the Amended Complaint, Doc. [53] at 15, alleging that PHFS breached its confidentiality and non-solicitation agreements with Narup and Reuter by attempting to assign those agreements.  Narup and Reuter also filed a Third-Party Complaint for tortious interference, *id.* at 18, against Brian Stoltz, Robert K. Zeitler, Sr., and Karon Zeitler.  In its Motion to Dismiss the Counterclaim, PHFS argues that Narup and Reuter have failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  Stoltz and the Zeitlers (the "Third-Party Defendants") similarly moved to dismiss the Third-Party Complaint on Rule 12(b)(6) grounds.  For the following reasons, the Court will dismiss both the Counterclaim and the Third-Party Complaint.

**I.      Background**

The Court, in a previous Order, laid out the complicated factual background to this case.  *See* Doc. [50] at 2–6.  Rather than restating those facts here, the Court will only briefly focus its

- 1 -

attention on the facts and procedural background pertaining directly to the instant Motions to Dismiss.

PHFS hired Reuter and Narup in 2011 and 2012, respectively.  Doc. [50] at 3.  Each of them subsequently signed identical confidentiality and non-solicitation agreements (the "Agreements"), Docs. [20-3] and [20-4], in December 2013.  In addition to detailing obligations respecting confidential information and solicitation, the Agreements included an "Enforcement" section providing the contracts' rules for enforcement of its provisions.  That section reads in relevant part as follows:

> This Agreement may be enforced by the Company and/or any successor or assign (a person/entity to which the Company's rights under this Agreement are transferred). . . .  Whether or not the Company transfers any of its rights and/or interests under this Agreement, I understand and agree that any successor or assign of all or part of the Company's business shall be entitled to the benefits of this Agreement.  I understand and agree that in the event of any sale, merger or other change in ownership or structure of the Company, in whole or in part, the resulting person/entity shall step into the place of the Company under this Agreement, without any additional consent of or notice to me, as if the term "Company" were defined in this Agreement to include such person/entity.  I also agree that, in the event the Company sells, transfers or mergers [sic] part, but not all, of its business, the terms of this Agreement shall be enforceable by the Company and the successor or transferee of that part of the business that was sold, transferred or merged.

Docs. [20-3] at 2, [20-4] at 2.  The First Amended Complaint provides that the non-PHFS Plaintiffs are "third-party beneficiaries and assigns to" the Agreements.[1]  Doc. [20] ¶¶ 57, 67.

Narup and Reuter allege in their Counterclaim that the Agreements were "personal services agreements" which therefore could not be assigned without their consent.  Doc. [53] at 16.  They allege that PHFS "purportedly attempted to assign the confidentiality and non-solicitation agreements to each of" the other nine Plaintiffs in this case, further asserting that they "never

---

[1] In their opposition to the Motion to Dismiss the Counterclaim, Narup and Reuter state the "[t]he terms of the purported assignment are unknown," noting that no assignment documents were attached to the pleadings and that the only recorded references to the assignment here are in the Amended Complaint.  Doc. [53] at 1 n.2.

consented to" this assignment. *Id.* This, Narup and Reuter allege, amounts to a material breach of the Agreements, discharging them of their duties under the Agreements. On this basis, Narup and Reuter contend that they have suffered damages because of Plaintiffs' action against them for allegedly violating of the Agreements.

Plaintiff PHFS, the Counter-Defendant here, moved to dismiss the Counterclaim on the grounds that it does not pass muster under Fed. R. Civ. P. 12(b)(6). Specifically, PHFS argues that it did not breach the Agreements because (1) Narup and Reuter consented to their assignment, as is evidenced by the Agreements' "Enforcement" sections, and alternatively (2) that the Court should dismiss the counterclaim even if Narup and Reuter did not consent because agreements that are not for "personal services" are "freely assignable" in Missouri. *See* Doc. [58] at 1–2. PHFS also argues that Narup and Reuter have not sufficiently alleged that the breach caused damages, an essential element of a contract claim in Missouri.

Narup and Reuter argue in opposition that they did not consent to assignment, as the "Enforcement" section of the Agreements only permits a successor or acquiring party to enforce the agreement "in the case of [a] merger, acquisition, sale, or spin-off of [PHFS]" but does not generally allow PHFS to assign the Agreements "outside of a restructuring or recapitalization of its business." Doc. [59] at 3–4. Without their consent, Narup and Reuter argue that assignment is not permitted because (1) PHFS's assignment "was not an actual, legally-effective assignment," and (2) PHFS's cited authorities do not support its arguments. *Id.* at 4–11. Finally, Narup and Reuter argue that their legal fees in the current action "flow naturally" from PHFS's assignment of the Agreements, and as such they have properly pleaded damages caused by PHFS's alleged breach. *Id.* at 11.

Narup and Reuter's Third-Party Complaint makes generally similar claims to the

Counterclaim. There, Narup and Reuter allege that Stoltz and Robert Zeitler, who are members of PHFS's senior management, pressured Reuter to perjure himself at a state-court trial where Zeitler, PHFS, and Plaintiff Pinebrook Holdings were defendants. Doc. [53] at 19. They further allege that Reuter testified truthfully, and the jury subsequently entered a verdict against Zeitler and Pinebrook Holdings, leading to "[j]udgments of over $2 million collectively" against them. *Id.* To punish Reuter and his associates for Reuter's testimony, Narup and Reuter assert that Stoltz and the Zeitlers decided to bring Plaintiffs' lawsuit against Narup and Reuter for breach of the Agreements. *Id.* at 19–20. As with the Counterclaim, Narup and Reuter claim that the Agreements were personal services agreements which could not be assigned without their consent, but PHFS attempted to assign the Agreements to the other Plaintiffs, which Narup and Reuter assert was a breach of the Agreements. *Id.* at 20. They plead that Stoltz and the Zeitlers were aware of the Agreements and "used their power as officers, directors, or owners" of PHFS to cause PHFS to breach the Agreements in order to punish Narup and Reuter for Reuter's testimony in the earlier lawsuit. *Id.*

## II.     Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, the Court must accept as true all the allegations pleaded in the complaint. *Schaar v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff cannot rest on mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866,

870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).  It is not enough under Fed. R. Civ. P. 8 to plead "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Id.*  (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

In Missouri, to succeed on a breach of contract claim the plaintiff must show (1) the existence and terms of a contract, (2) that he or she performed as the contract required, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages. *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1188 (8th Cir. 2015); *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010).  A claim for tortious interference with a contract in Missouri requires the plaintiff to demonstrate "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Western Blue Print Co. v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012).  The elements of the related claim of tortious interference with a business relationship are "(1) [t]he plaintiff was involved in a valid business relationship; (2) the defendant was aware of the relationship; (3) the defendant intentionally interfered with the relationship, inducing its termination; (4) the defendant acted without justification; and (5) the plaintiff suffered damages as a direct result of defendant's conduct." *Clinch v. Heartland Health*, 187 S.W.3d 10, 14 (Mo. Ct. App. 2006).

**III.   Discussion**

The Court first addresses PHFS's Motion to Dismiss the Counterclaim before turning to Third-Party Defendants' Motion to Dismiss the Third-Party Complaint.

### A. *PHFS's Motion to Dismiss Narup and Reuter's Counterclaim*

The Court begins its analysis with the terms of the Agreements. *See Schoedinger v. Beck*, 557 S.W.3d 531, 536 (Mo. Ct. App. 2018) ("Where the parties have expressed their final and complete agreement in writing and there is no ambiguity in the contract, the intent of the parties must be determined solely from the four corners of the contract itself."); *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. banc 2012) ("If a contract is unambiguous, 'the intent of the parties is to be discerned from the contract alone' based on the plain and ordinary meaning of the language used." (quoting *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 676 (Mo. banc 2011))). "Absent ambiguity, courts will not resort to any canons of construction, and the contract will be enforced as written." *Behrick v. Konert Farms Homeowners' Ass'n*, 601 S.W.3d 567, 573 (Mo. Ct. App. 2020).

The plain language of the "Enforcement" section in the Agreements appears unambiguous and expressly contemplates that PHFS may assign the agreements: it provides that "any . . . assign," defined in the contracts as "a person [or] entity to which the Company's rights under this Agreement are transferred," may enforce the Agreement and "shall be entitled to the benefits of [the Agreements]." Docs. [20-3] at 2, [20-4] at 2. Narup and Reuter attempt to cast this provision's applicability as limited to enforcement by a "successor or acquiring entity" in the context of a "merger, acquisition, sale, or spin-off of" PHFS, but this does not accord with the provisions' plain meaning, and "[a]n ambiguity does not exist merely because the parties dispute the meaning of the contract." *Behrick*, 601 S.W.3d at 573. The provisions expressly grant the benefits of the Agreements to any assignee "[w]hether or not [PHFS] transfers any of its rights and/or interests under this Agreement." Docs. [20-3] at 2, [20-4] at 2. The Court is satisfied that this provision sufficiently conveyed the possibility of assignment to Narup and Reuter; their assent to the

Agreements, therefore, amounts to consent to the possible assignment thereof.  That being so, PHFS could not have breached the Agreements by attempting to assign them.

Furthermore, contrary to Narup and Reuter's conclusory pleading, see Doc. [53] at 16, freestanding noncompete or confidentiality agreements are not personal services agreements, which are generally unassignable without consent.[2]  The Agreements impose no affirmative obligations on Narup and Reuter, requiring "only that they *refrain* from certain actions." *Symphony Diagnostic Services No. 1 Inc. v. Greenbaum*, 828 F.3d 643, 647 (8th Cir. 2016); *see also Sanfillippo v. Oehler*, 869 S.W.2d 159, 163 (Mo. Ct. App. 1993) (severing a noncompete agreement from an employment agreement and finding that the noncompete agreement was not one for personal services).  The Court agrees with the *Greenbaum* court's reasoning in finding that the Agreements, which are distinct from and were signed at a different time than Narup and Reuter's employment agreements, are not personal services agreements.[3]

Narup and Reuter, relying on dictum in the *Greenbaum* decision, further argue that the Court should find the purported assignments here impermissible because the assignments

---

[2] While noting the Missouri Supreme Court had yet to weigh in on the issue, in *Symphony Diagnostic Services No. 1 Inc. v. Greenbaum*, 828 F.3d 643 (8th Cir. 2016), the 8th Circuit predicted that Missouri "would permit assignment of covenants not to compete without contemporaneous consent."  828 F.3d at 646.  Missouri courts have long held that, in general, personal services contracts—defined as those involving "special knowledge, skill or a relation of personal confidence," *Roeder v. Ferrell-Duncan Clinic, Inc.*, 155 S.W.3d 76, 84 (Mo. Ct. App. 2004)—may not be assigned without both parties' consent.  *See Sympson v. Rogers,* 406 S.W.2d 26, 30 (Mo. 1966); *Dent Wizard Int'l Corp. v. Sterner*, 4:06-cv-00492 ERW, 2007 WL 9809049, at *3 (E.D. Mo. Aug. 2, 2007).

[3] Narup and Reuter argue that the *Roeder* case, *supra* note 2, is applicable here, but that case is easily distinguishable.  As discussed in *Greenbaum*, *Roeder* dealt with noncompete agreement that was part of an employment agreement rather than a standalone noncompete, see *Greenbaum*, 828 F.3d at 646–47.  It was this employment agreement that the *Roeder* court determined was a personal services agreement that could not be assigned without consent.  *See Roeder*, 155 S.W.3d at 84–85.  The Agreements here are freestanding restrictive covenants independent of Narup and Reuter's employment agreements with PHFS.  Further, the *Roeder* court noted that it was deciding "whether a contractual obligation to perform personal services can be assigned absent the mutual and contemporaneous consent of both parties."  *Id.* at 86.  Not only does the Court find that the Agreements are not personal services contracts, but also, as discussed *supra* at 6, it finds that the Enforcement provision permits the inference of Narup and Reuter's consent to assignment.

"materially change [Narup and Reuter's] obligations" under the non-solicitation portions of the Agreements. *Greenbaum*, 828 F.3d at 647–48; *see* Doc. [59] at 7–8. This argument falls short for several reasons. First, the *Greenbaum* court specifically suggested that an assignment materially changing the obligations of a noncompete agreement could *potentially*[4] be precluded "in the absence of an explicit provision permitting assignment." *Greenbaum*, 828 F.3d at 647–48. As discussed, the Agreements do expressly contemplate assignment. Even if the Court were to assume that the Agreements did not include an "explicit provision permitting assignment," *id.* at 647, PHFS's assignment of the Agreements to the other Plaintiffs would not "greatly expand the burden of the non-solicit agreements," Doc. [59] at 7. The non-solicitation provisions prohibit Narup and Reuter from soliciting or attempting to solicit "Customers" for purposes of competing with PHFS. The Agreements define "Customers" as "any person who entered into a loan through [PHFS] *and with whom [Reuter or Narup] dealt in connection with any such loan*" in the twelve months prior to any dispute under the Agreements or, "in the case of [Narup or Reuter's] employment having ended," in the twelve months prior to Narup or Reuter's separation from PHFS. Docs. [20-3] at 2, [20-4] at 2 (emphasis added). This limits Narup and Reuter's ability to solicit only with respect to certain individuals within a fixed timeframe—hardly an open-ended group.

Narup and Reuter assert, in conclusory fashion, that "ten is materially more than one" in reference to the number of parties who could enforce the Agreement after PHFS's alleged assignment. But no matter the number of parties who may *enforce* the Agreements against them,

---

[4] In discussing the possibility, the 8th Circuit did not decide whether Missouri would prohibit assignment in such a case, as it appeared to find that the obligations under the noncompete agreements in that case were not materially different after assignment. *See Greenbaum*, 828 F.3d at 648 ("We need not decide whether Missouri would disallow assignments in cases such as these. The non-compete agreements here precluded only working in the field of medical diagnostics or soliciting business from certain clients within a specified geographical area. That obligation is no different whether enforced by [the assignor or assignee].").

Narup and Reuter's *obligations* under the Agreements do not change; the number and identities of the "Customers" whom they may not solicit under the Agreements is in no way tied to the number of entities possessing the contractual power to enforce the Agreements against them.  *See Greenbaum*, 828 F.3d at 648.  Narup and Reuter urge that the assignees here "engage in different business[es] with many more employees" than PHFS, preventing Narup and Reuter from soliciting individuals "across the nation."  Doc. [59] at 8.  But the Agreements bar solicitation of a specific, limited subset of individuals, not the broad pool Narup and Reuter suggest.  It is clear from the Agreements that any assignment by PHFS would not create additional obligations on Narup or Reuter with respect to the non-solicitation provisions.  Even if Narup and Reuter did not consent to the assignments, PHFS did not breach the Agreements by assigning them.[5]

The Court finds that the plain language of the Agreements and the relevant law serve as an "insuperable bar" to the breach of contract Counterclaim asserted here.  Narup and Reuter claim that PHFS's attempted assignment constitutes a breach, but such assignment is not, as a matter of law, a breach of the Agreements.  They have thus failed to properly plead a necessary element of a breach of contract claim.  The Court therefore need not reach the issue of whether Narup and Reuter pleaded sufficient facts on the element of damages.  PHFS's Motion to Dismiss the counterclaim is granted.

### B. Third-Party Defendants' Motion to Dismiss the Third-Party Complaint

Third-Party Defendants offer three distinct grounds on which to dismiss Narup and Reuter's intentional interference claim: (1) that Stoltz and the Zeitlers, as officers, directors, or

---

[5] Narup and Reuter also argue that PHFS "did not legally assign the agreements to the other plaintiffs" because it "did not follow the legal requirements for an effective assignment." Doc. [53] at 4–5.  But Narup and Reuter claim that PHFS's "*attempted* assignment[s]" of the Agreements were a breach. Doc. [53] at 16–17 (emphasis added).  The Court therefore need not reach the issue of the legality of the alleged assignments, which is irrelevant to Narup and Reuter's Counterclaim.

owners of PHFS, acted *as* PHFS in allegedly breaching the agreement, and a party to a contract cannot tortiously interfere with its own contract, Doc. [68] at 4–5; (2) that there was no underlying breach of the Agreements, a necessary element of a tortious interference claim, *id.* at 6–9; and (3) that Narup and Reuter have not pleaded damages resulting from the Third-Party Defendants' conduct, also a necessary element of tortious interference, *id.* at 9–10.

The Court need not address each of these arguments, since, as discussed above, it finds that as a matter of law PHFS did not breach the Agreements. The parties acknowledge that the arguments pertaining the breach in the Motions to Dismiss the Counterclaim and Third-Party Complaint largely track one another, see Docs. [72] at 8 and [73] at 7, and as such the Court's analysis of the arguments on the Motion to Dismiss the Counterclaim, Doc. [57], applies equally to the arguments on the Motion to Dismiss the Third-Party Complaint, Doc. [67].

Narup and Reuter object to Third-Party Defendants' recitation of the elements for tortious interference, arguing that tortious interference does not necessarily require breach and can also apply here if the Third-Party Defendants caused PHFS to "terminate the agreements." Doc. [72] at 7. Narup and Reuter do not explicitly state whether they are claiming tortious interference with contract, for which contract breach is an element, or tortious interference with a business expectancy, which "generally pertain[s] to the defendant's interference with a reasonable expectancy of future financial benefit." *Rail Switching Servs., Inc. v. Marquis-Mo. Terminal, LLC*, 533 S.W.3d 245, 259 (Mo. Ct. App. 2017). The allegations in the Third-Party Complaint specifically include, however, that the Third-Party Defendants "were aware of the confidentiality and non-solicitation agreements" between PHFS, Narup, and Reuter and that the Third-Party Defendants caused PHFS to breach the Agreements, stating that "[the Third-Party Defendants] used their power as officer, directors, or owners of" PHFS "to cause [PHFS] to breach the

confidentiality and non-solicitation agreements." Doc. [53] at 21. Nowhere do Narup and Reuter plead that the Third-Party Defendants caused PHFS to end its relationship with them. The Court therefore construes the Third-Party Complaint as claiming tortious interference with contract. As such, "intentional interference . . . inducing or causing a breach of the contract" is indeed a necessary element of this claim. *See Rail Switching Servs.*, 533 S.W.3d at 259.

As the Court finds that PHFS did not breach the Agreements by allegedly assigning them, Narup and Reuter have failed to meet the necessary element of contract breach and thus have failed to state a claim for tortious interference with contract. Third-Party Defendants' Motion to Dismiss the Third-Party Complaint, Doc. [67], is granted.

## Conclusion

PHFS did not, as a matter of law, breach its confidentiality and non-solicitation agreements with Narup and Reuter by purportedly assigning the Agreements to the other Plaintiffs. Narup and Reuter have thus failed to properly plead essential elements of their breach of contract claim against PHFS and their tortious interference with contract claim against Stoltz and the Zeitlers.

Accordingly,

**IT IS HEREBY ORDERED** that PH Financial Services, LLC's Motion to Dismiss Defendants' Counterclaim, Doc. [57], is **GRANTED**.

**IT IS FURTHER ORDERED** that Third-Party Defendants' Motion to Dismiss Third-Party Complaint, Doc. [67], is **GRANTED**.

Dated this 4th day of December, 2020.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE