IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PINEBROOK HOLDINGS, LLC, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AARON NARUP, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 19-cv-1562 |

DEFENDANTS' TRIAL BRIEF

Steve Reuter and Aaron Narup are former employees of PH Financial Services ("PH Financial"). Reuter is the owner and operator of American Credit Services ("ACS"), a company he bought from Pinebrook Holdings' owner, Bob Zeitler, in 2013. At the time of that transaction, ACS entered into a management services agreement with PH Financial under which ACS paid a monthly fee for information technology ("IT"), accounting, and other management services. During the years the management services agreement was in place, ACS paid PH Financial to use QFund loan management software and to pay its pro rata share for the cost of QFund customizations. ACS terminated its agreement with PH Financial when PH Financial fired Reuter.

Plaintiffs' primary claims are that (a) PH Financial's QFund customizations were proprietary, and (b) that Reuter and Narup surreptitiously diverted to ACS PH Financial's planned upgrade of the QFund loan software to QFund10 at plaintiffs' loan stores.

To the extent that any defendant had a relationship with a plaintiff, it was only with PH Financial. While PH Financial is the only entity that claims to own the allegedly misappropriated trade secrets and is also the only entity to which Narup and Reuter owed any duty of loyalty, PH Financial admittedly has no damages. Plaintiffs' claimed

damages are instead based on losses alleged by affiliated entities that own businesses that make loans, but own no trade secrets and that never had a relationship with any defendant.

The evidence will show PH Financial knew all along that ACS was upgrading to QFund10. The evidence will show that PH Financial expressly authorized Narup to spend up to one hour per day helping ACS with its upgrade to QFund10. Narup's services were both expressly directed by PH Financial and called for by its management services agreement with ACS.

The QFund customizations that are so central to plaintiffs' claims are not PH Financial's trade secrets (or the trade secrets of any plaintiff). ACS paid its share of the costs of the customizations over the course of many years. ACS was provided access to QFund10 by Virinchi, which publishes the software. Virinchi provided ACS this access knowing that ACS was a separately owned entity not under the Pinebrook umbrella. ACS paid Virinchi an implementation fee to set up QFund10 for ACS.

Importantly, plaintiffs do not claim that QFund10 is their trade secret. Instead, plaintiffs contend that the opportunity to upgrade to QFund10 was taken from them. One of the issues the Court will have to address, therefore, is how a supposedly "diverted opportunity" fits into any of plaintiffs' causes of action when the opportunity does not relate to either plaintiffs' alleged trade secrets or their confidential information.

Plaintiffs' "business model" alleged trade secret has never been defined by any plaintiff with any particularity. The "business model" is, instead, an amorphous and ever-evolving concept incapable of satisfying the standards for being a trade secret.

The Court will also have to address the complete lack of any connection between plaintiffs' causes of action and their alleged lost profits. According to plaintiffs, if they

had been able to timely implement QFund10, it would have allowed them to operate an omni-channel loan platform that would enable their borrowers to seamlessly interact with their lender online and in stores. This omni-channel feature is not a trade secret and, in fact, omni-channel functionality has been available to plaintiffs since 2014. Moreover, defendants never implemented any omni-channel capabilities for their loan stores. Yet defendants' supposed denial to plaintiffs of omni-channel capabilities is the sole basis for plaintiffs' purported lost profits calculations.

There must be a causal connection between the alleged wrong and the alleged damages. Here, no causal connection exists.

Plaintiffs' failure to mitigate is an additional issue. Plaintiffs claim they would have completed a conversion to QFund10 and implemented omni-channel capabilities within eight months of beginning a conversion to QFund10. Plaintiffs say defendants prevented them from beginning this conversion. Yet 30 months after Reuter and Narup left PH Financial's employ, none of the plaintiffs or their loan stores had converted to QFund10 with omni-channel capabilities. Plaintiffs offer no explanation why in 30 months they have not achieved what they claim they could have done in eight.

The admissibility of Brian Stoltz's lost profits opinion testimony is another key issue. Stoltz is an employee of PH Financial. He plans to testify that if the plaintiffs' loan stores had omni-channel capabilities, they would be writing an additional 15 loans per loan product per month. Stoltz, however, has no experience with, or personal knowledge of, omni-channel capabilities. Stoltz formed his lay opinions by relying on hearsay. This violates Federal Rule of Evidence 701(a).

> Rule 701(a) contains a personal knowledge requirement. In presenting lay opinions, the personal knowledge requirement may be met if the witness can demonstrate firsthand knowledge or observation. A lay witness's

3

opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury. **But a lay opinion witness may not testify based on speculation, rely on hearsay or interpret unambiguous, clear statements.**

*United States v. Lloyd*, 807 F.3d 1128, 1154 (9th Cir. 2015) (citations omitted, emphasis added).

The defendants did not misappropriate any trade secrets. They did not breach any duty of loyalty owed to PH Financial. Narup and Reuter did not interfere with each other's contracts with PH Financial. And no plaintiff has been damaged by any action of any defendant.

At the end of plaintiffs' evidence, defendants anticipate move for judgment as a matter of law under Rule 50, Federal Rules of Civil Procedure, due to plaintiffs' inability to make a submissible case as to all elements of any of their claims.

Respectfully submitted,

JACOBSON PRESS P.C.

/s/ Matt Vianello
Matthew B. Vianello, #63303 MO
Joe D. Jacobson, #33715 MO
222 S. Central Ave., Suite 550
Clayton, Missouri 63105
Tel: (314) 899-9789
Fax: (314) 899-0282
Vianello@ArchCityLawyers.com
Jacobson@ArchCityLawyers.com

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

The filing attorney certifies that a true and accurate copy of the foregoing was served on all parties of record via the Court's e-filing system.

4